UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STACY HAWKINS,

    *Plaintiff*,

v.

WILLIAM RICHTER,
NEVIN STEINBRINK,
NICHOLAS WILSON,
MICHAEL HERBOLSHEIMER,
STEINBRINK ENGINEER,
FASHION SQUARE DENTAL,
and GOOGLE, INC.,

    *Defendants*.

CASE NO. 16-12945

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE PATRICIA MORRIS

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (Docs. 11, 29)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss, (Docs. 11, 29), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED**.

### II.    REPORT

#### A.    Introduction

On August 12, 2016, Plaintiff Stacy Hawkins filed a *pro se* complaint against Defendants William Richter ("Richter"), Nevin Steinbrink ("Steinbrink"), Nicholas Wilson ("Wilson"), Michael Herbolsheimer ("Herbolsheimer"), Steinbrink Engineer ("Engineer"),

1

Fashion Square Dental ("FSD"), and Google, Inc. ("Google"). (Doc. 1). District Judge Ludington referred all pretrial matters to the undersigned Magistrate Judge on August 22, 2016. (Doc. 3). On September 27, 2016, Google filed one of the instant motions to dismiss, (Doc. 11), to which Hawkins replied, (Doc. 26). Thereafter, FSD, Herbolsheimer, Richter, Steinbrink, Engineer, and Wilson filed the other motion to dismiss before this Court, and Hawkins responded on February 9, 2017. (Doc. 29).

Hawkins's lengthy complaint sets forth a number of allegations, but several prove particularly salient to the analysis that follows. In June 2012, Hawkins and Richter began discussing the prospect for a "scheduling app that would allow patients to schedule dental appointments on their mobile device." (Doc. 1 at 6). This resulted in creation of the LLC "Click Care," for which an operating agreement was eventually signed. (Doc. 1 at 7, 18); (Doc. 29, Operating Agreement). Over time, and after consultation with a number of different individuals, Click Care's product evolved into a digital toothbrush "that would contain internal components that could detect where the head of the toothbrush was in the mouth as a person brushed their teeth. . . . connect with a mobile phone via Bluetooth. . . . [and] display[] [the data collected] in an app on the mobile phone so that the person brushing could see how well they brushed." (Doc. 1 at 8). They agreed on the name "LifeBrush." (Doc. 1 at 11).

After encountering some difficulty in raising funds to craft the prototype, Click Care began working with Engineer. (Doc. 1 at 12). Hawkins instructed the other partners in this alliance—Richter, Steinbrink, Wilson, and Herbolsheimer ("the Click Care team")—to do a variety of things—such as take "free online [business] classes" or "curate a list of the individuals who backed . . . successful" crowdfunding campaigns—that they "chose not to [do]

because it intruded on the time they could spend with friends and family." (Doc. 1 at 13). Meanwhile, Hawkins "worked on doing whatever he could do to help the company. Twelve and thirteen hour days were common, to the chagrin of friends and family." (Doc. 1 at 14).

At some point, Hawkins and "the Click Care team agreed to create business emails. Google's system was used to create the email addresses: Stacy@LifeBrush.net, LifeBrushTeam@LifeBrush.net, Developer@LifeBrush.net." (Doc. 1 at 17). Hawkins suggests that he "was the Super Administrator of these email accounts," and "he alone had access to the password for using [his LifeBrush] email." (*Id.*). Hawkins also alleges that that he "created a password-protected, LinkedIn profile and called it 'LifeBrush Team,' though he later changed the name to 'Click Care's LifeBrush.'" (Doc. 1 at 21).

Relations soured in the summer of 2016. The Click Care team informed Hawkins "they were voting him out of the company," and Hawkins allegedly called their bluff, contending "that his equity gave him the authority to vote them out and he was exercising that right to do so." (Doc. 1 at 28). Indeed, Hawkins supposes "that he made a Capital Contribution before and after signing" the operating agreement for Click Care "by foregoing the salary that he could have earned for his work," and that "the sweat equity he put in when compared to any Capital Contribution purported by any other member leaves [him] as the majority shareholder based on this formula." (Doc. 1 at 19). Richter's attorney sought "the passwords to the social media profiles [and email accounts] [Hawkins] had curated," but Hawkins denied the request. (*Id.*). Thereafter, the Click Care team "entered an agreement that they were not going to wait for a court to decide ownership of Click Care." (*Id.*).

3

> [Steinbrink] attempted to hack the LinkedIn profile [Hawkins] had set up. When that failed he contacted Google Tech Support and asked it to help him hack [Hawkins's] personal/business email Stacy@LifeBrush.net. Google Tech Support then walked [Steinbrink] through how to hack the email account. [Steinbrink] followed the steps provided by Google Tech Support and gained access to [Hawkins's] email account. [Steinbrink] then changed the password and changed the recovery phone number and email. At no time did Google Tech Support reach out and contact [Hawkins] to determine whether this action was lawful or appropriate under the circumstances. [Steinbrink] also hacked the email accounts of LifeBrushTeam@LifeBrush.net, and Developer@LifeBrush.net. He also changed the passwords for these accounts. . . . [Hawkins] reset the recovery information. . . . The next day [Steinbrink] hacked the email and LinkedIn accounts again. This time [Hawkins] was not able to recover the email account or the LinkedIn account. The email account contained evidence that support [Hawkins's] claims for having authority over the company. [The Click Care team] hacked the email and blocked [Hawkins's] access to that documentation."

(Doc. 1 at 29).

### B. Motion to Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

5

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment).

Because Plaintiff proceeds *in forma pauperis*, his complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that his complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In addition, federal courts hold an independent obligation to examine their own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules of Procedure provides that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

**C.     Analysis**

Hawkins includes ten counts in his complaint: (1) Declaratory Relief on Email/Social Media Hacking; (2) Violation of Stored Communications Act – 18 U.S.C. 2701 *et seq.*; (3) Violation of Michigan's Misuse of Computer Statute – M.C.L. 752.791 *et seq.*; (4) Breach of Fiduciary Duty by Google; (5) Breach of Fiduciary Duty by Steinbrink; (6) Breach of Fiduciary Duty by Steinbrink Engineer; (7) Breach of Fiduciary Duty by Richter; (8) Declaratory Relief as to Operating Agreement; (9) Breach of Contract by Richter, Steinbrink, Wilson, Herbolsheimer, and Engineer; (10) Conversion by Richter, FSD, Steinbrink, Wilson, Herbolsheimer, and Engineer. Because I find that this Court lacks subject matter jurisdiction over the present action, I decline to reach the merits of the claims asserted.[1]

There are two ways this Court can obtain jurisdiction over a case: First, the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute confers on the federal district courts what is known as "federal question jurisdiction." Second, pursuant to 28 U.S.C. § 1332, diversity jurisdiction arises when the matter is between citizens of different states and the amount in controversy exceeds $75,000. In this case, all parties but Google are Michigan citizens, and therefore complete diversity is lacking. *E.g.*, *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State

---

[1] As the Supreme Court instructs, justiciability questions must be resolved before determining the existence of a cause of action. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirements that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

from *each* plaintiff. Over the years Congress has repeatedly re-enacted or amended the statute conferring diversity jurisdiction, leaving intact this rule of complete diversity."). To litigate in federal court, therefore, Hawkins's complaint must, at least in part, raise a federal question. *See generally Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("Under our longstanding interpretation of the current statutory scheme, the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983))). It does not.

The only claim in Hawkins's complaint that sounds in federal law asserts that the Click Care team violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, by "access[ing] password-protect[ed] email/social media accounts that [Hawkins] used and controlled without [his] permission and locked him out of those accounts." (Doc. 1 at 32). He claims as well that "Google assisted and/or acted in concert with [the Click Care team's] hacking [of Hawkins's] email/social media accounts without acting in good faith in violation of 18 U.S.C. [§] 2701 *et seq.*" (*Id.*). In response, Google suggests that Hawkins "lacks standing" to challenge these alleged hacks because he "admits that the email accounts in question belong to ClickCare [sic], not him." (Doc. 11 at ID 84).

The doctrine of standing helps ensure that federal jurisdiction extends only to "those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At a minimum, "standing" entails that plaintiffs surpass three hurdles: (1) they must "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of" must exist; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). Hawkins's complaint fatally stumbles on the first of these requirements.

Although Hawkins alleges he acted as "Super Administrator" of the Click Care email accounts, (Doc. 1 at 17), he acknowledges that "Click Care created LifeBrush.net" and "Click Care created email accounts using a company bank account . . . ." (Doc. 1 at 30). He held no ownership (or other) interest in the emails, and cannot recover under his own name for harm to them because he was not, in fact, the injured party. *See, e.g.*, M.C.L. § 450.4504(2) ("A member has no interest in specific limited liability company property."); *Trident-Allied Assocs., LLC. v. Cypress Creek Assocs., LLC.*, 317 F.Supp.2d 752, 754 (E.D. Mich. 2004) ("It is evident that the Michigan legislature fashioned the limited liability company to be a legal entity distinct from its members."). *Compare Mohr v. A.O. Smith Corp.*, No. 88-CV-10043-BC, 1994 WL 178111, at *1 (E.D. Mich. Mar. 25, 1994) (finding in a partnership context "some uncertainty as to whether the economic harm arising out of the demise of the farming business accrued to the partnership or to the individual plaintiffs"), *with* M.C.L. § 450.4501(4) ("Unless otherwise provided by law or in an operating agreement, a person that is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company."), *and* (Doc. 29, Operating Agreement at 5) ("[N]or does any

Member have any interest, right, or claim in or to any of the Company's assets including intellectual property developed for the furtherance of Company's interests by a Member or an employee."). Indeed, Hawkins performed all work in relation to these email and social media accounts on Click Care's behalf, and disclaimed any "interest, right, or claim in or to" these assets when he signed the Operating Agreement. (Doc. 29, Operating Agreement at 5); (Doc. 1 at 18, 21). And even if he joined Click Care to the action, he could not represent it *pro se*. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). Because Hawkins suffered no injury to a legally protected interest, he has no standing to bring his SCA claim, and it should be discarded for lack of subject matter jurisdiction.

Once this Court's lack of jurisdiction over Hawkins's SCA claim becomes apparent, jurisdiction over the remainder of his complaint begins to unravel. Count I must fail because it seeks a declaratory judgment with respect to privacy protections under Michigan and federal law, impermissible at least insofar as declaratory relief is only appropriate in relation to actual cases and controversies properly in federal court. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only. In providing remedies and defining procedure in relation to cases and controversies in the constitutional sense the Congress is acting within its delegated power over the jurisdiction of the federal courts which the Congress is authorized to establish."). Count III, which rests on Michigan's Unauthorized Access to Computers Act, must also fail because—in addition to being a criminal statute without a private cause of action, *see Garback v. Lossing*,

No. 09-cv-12407, 2010 WL 3733971, at *8 (E.D. Mich. Sept. 20, 2010) (finding "no authority" to suggest that this statute "permit[s] enforcement . . . through a private civil action")—any relief it *could* (*in theory*) afford would be a matter of state law. Hawkins's remaining counts likewise beg relief under state law for alleged breaches of fiduciary duties, breach of contract, and conversion, none of which a federal court may properly entertain absent a constitutional basis for subject matter jurisdiction over the case. *Accord Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to Rule [12(h)(3)], then supplemental jurisdiction can *never* exist. A Rule [12(h)(3)] dismissal postulates that there never was a valid federal claim."). Accordingly, this Court is not permitted to entertain Hawkins's complaint and it should be dismissed.

### D.  Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' Motions To Dismiss, (Docs. 11, 29), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED**.

### III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d

435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 16, 2017　　　　　　　　　　　　S/ PATRICIA T. MORRIS
　　　　　　　　　　　　　　　　　　　　　　Patricia T. Morris
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Stacy Hawkins at 2400 S. 23rd St., Saginaw, MI 48601.

Date: March 16, 2017　　　　　　　　　　　　By s/Kristen Castaneda
　　　　　　　　　　　　　　　　　　　　　　Case Manager